APPORTIONMENT OF MUSKEGON COUNTY
BOARD OF COMMISSIONERS—1970

1. COUNTIES—APPORTIONMENT—STATUTORY GUIDELINES—DISTRICTS—
POPULATION VARIANCE.

An important statutory guideline in apportioning a county into
commissioner districts is that all districts shall be single-
member districts and as nearly of equal population as is
practicable (MCLA § 46.404[a]).

2. COUNTIES—DISTRICTS—POPULATION VARIANCE—APPORTIONMENT—
STATUTORY GUIDELINES.

Substantially unequal population between single-member commis-
sioner districts of a county cannot be justified by the guidelines
in the apportionment statute (MCLA § 46.404).

3. COUNTIES—APPORTIONMENT—STATUTORY GUIDELINES—POPULATION
VARIANCE—JUSTIFICATION OF VARIANCE.

The one man-one vote requirement is imposed on county gov-
ernment by United States Supreme Court opinion; therefore
a county apportionment commission, in making an apportion-
ment plan which adheres to the statute requiring as nearly
as equal population as is practicable, must make a good-faith
effort to achieve mathematical equality, and unless population
variance among the commissioner districts is shown to have
resulted despite such effort, the commission must justify
each variance, no matter how small (MCLA § 46.404).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  25 Am Jur 2d, Elections §§ 16–21, 25–33.
[3]  25 Am Jur 2d, Elections §§ 16, 31.
[4]  25 Am Jur 2d, Elections §§ 18, 29.
[5, 6]  25 Am Jur 2d, Elections §§ 14–32.

4. COUNTIES — DISTRICTS — POPULATION VARIANCE — JUSTIFICATION
   — GERRYMANDERING.

   Avoidance of gerrymandering and fragmenting of political sub-
   divisions are not legally acceptable reasons to justify variances
   in population of single-member commissioner districts of a
   county.

5. COUNTIES — DISTRICTS — BOARD OF COMMISSIONERS — POPULATION
   VARIANCE — JUSTIFICATION.

   The fact that very slightly more than 50% of the county's
   population may elect a majority of the county board of
   commissioners cannot be used to justify a population vari-
   ance of 24.2% between two single-member commissioner dis-
   tricts of a county.

6. COUNTIES—APPORTIONMENT PLAN—POPULATION VARIANCE—JUSTI-
   FICATION OF VARIANCE—CONSTITUTIONAL LAW.

   No fixed numerical or percentage of population variance be-
   tween single-member commissioner districts of a county can
   assure acceptance of a county apportionment plan, for each
   plan must be considered on its own merits and the drafters
   of the plan must justify all population variances and dem-
   onstrate a good-faith effort to achieve population equality;
   however, any plan containing a variance ratio in excess of
   1:1.10 is of doubtful constitutional validity.

Original statutory action in Court of Appeals to
review apportionment plan. Submitted Division 3
April 3, 1970, at Lansing. (Docket No. 9,110.) De-
cided April 9, 1970. Application for leave to appeal
denied April 23, 1970. See 383 Mich 779.

Statutory petition by William A. Peterson and
Robert Price for review of county apportionment
plan filed by the Muskegon County Apportionment
Commission and for new plan conforming with statu-
tory and constitutional requirements. Reversed and
remanded to Muskegon County Apportionment Com-
mission to reapportion the county Board of Com-
missioners.[1]

---

[1] Formerly known as the Muskegon County Board of Supervisors;
amended by PA 1969, No 137, effective March 20, 1970.

*Landman, Hathaway, Latimer, Clink & Robb (Fred C. Culver, Jr.,* of counsel), for petitioners.

*Paul M. Ladas,* Muskegon County Prosecuting Attorney, for Apportionment Commission.

*White, Spaniola, Knudsen & Stariha, amicus curiae,* for Muskegon County Board of Commissioners.

Before: QUINN, P. J., and McGREGOR and DANHOF, JJ.

McGREGOR, J. On October 23, 1968, this Court found the apportionment plan of Muskegon County Board of Supervisors to be invalid for noncompliance with statutory requirements. *In Re Apportionment of Muskegon County Board of Supervisors—1968* (1968), 13 Mich App 697. However, because the 1968 primary election had already been held under the provisions of the plan, the election of the board of supervisors in Muskegon County for 1968 was allowed to proceed under the invalid plan.

On January 28, 1970, the Muskegon County Apportionment Commission adopted a new plan and filed it with the Secretary of State. On petition of a registered elector of Muskegon County this Court reviews the apportionment plan so adopted. PA 1966, No 261, § 6 (MCLA § 46.406, Stat Ann 1970 Cum Supp § 5.359[6]).

The plan under review calls for a board of 15 members to be elected from 15 separate districts within the county of Muskegon. The average population of a "perfect district would be 9,996. The largest district is district 4 having a population of 11,072 or 10.8% under-represented. The smallest district is district 14 having a population of 8,660 or 13.4%

over-represented. Thus, the population spread from the largest to the smallest is 24.2% and the ratio between the largest and the smallest is 1.28 to 1. Based upon the 1960 census figure a minimum percentage of persons who could elect a majority of the board (8) is 50.3%.

For reasons hereinafter stated we find that the proposed plan does not meet the requirements of provisions of PA 1966, No 261, as amended, nor the requirements of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States.

Defendant argues that the variances in population are justified in order to obtain compact square-shaped districts, avoid gerrymandering, avoid the splitting of precincts, and to avoid the division of political subdivisions as allowed by PA 1966, No 261, § 4 (MCLA § 46.404[b] through [h], Stat Ann 1970 Cum Supp § 5.359[4]). However, § 4(a), (MCLA § 46.404[a], Stat Ann 1970 Cum Supp § 5.359 [42]) states:

"In apportioning the county into supervisor districts, the county apportionment commission shall be governed by the following guidelines in the stated order of importance:

(a) All districts shall be single-member districts and *as nearly of equal population as is practicable.*" (Emphasis supplied.)

Previously in *In Re Apportionment of Allegan County Board of Supervisors—1968* (1968), 13 Mich App 692, 695, we stated:

"Section 4(a) thereof makes the basic requirement of county apportionment 'single-member districts and as nearly of equal population as is practicable'. The remaining mandatory guidelines specified in section 4(b) through (h) are subsidiary to (a), and

while they are to be followed in formulating an apportionment plan and while they may assist in determining the practicality of population variance between districts, they will not justify districts of substantially unequal population."

This requirement has been reinforced by the United States Supreme Court in *Kirkpatrick* v. *Preisler* (1969), 394 US 526, (89 S Ct 1225; 22 L Ed 2d 519) when the Court discussed the requirement "as nearly as practicable." On p 530, 531 the Court stated:

"Since 'equal representation for the equal numbers of people [is] the fundamental goal for the House of Representatives,' *Wesberry* v. *Sanders* [(1964), 376 US 1 (84 S Ct 526; 11 L Ed 2d 481)], *supra,* at 18, the 'as nearly as practicable' standard requires that the State make good-faith effort to achieve precise mathematical equality. See *Reynolds* v. *Sims* (1964), 377 US 533, 577, (84 S Ct 1362, 12 L Ed 2d 506, 536). Unless population variances among congressional districts are shown to have resulted despite such effort, the State must justify each variance, no matter how small."

Since *Avery* v. *Midland County, Texas* (1968), 390 US 474 (88 S Ct 1114; 20 L Ed 2d 45) imposes the "one man-one vote" requirement on county government, we conclude that the requirement stated in *Kirkpatrick* v. *Preisler* relative to congressional apportionment is equally applicable in this case.

Laudable as may be the efforts to avoid gerrymandering and the fragmenting of political subdivisions, these too have been rejected by the Supreme Court if they are used to avoid equal population.[2]

---

[2] The desire to preserve artificial and arbitrary political subdivisions is even less convincing in the instant plan where the commission has already violated boundaries of precincts, municipalities and townships in at least seven instances to achieve what are still districts of unequal population.

Justice BRENNAN speaking for the Court in *Kirkpatrick* v. *Preisler, supra,* pp 533, 534 states:

"Similarly, we do not find legally acceptable the argument that variances are justified if they necessarily result from a State's attempt to avoid fragmenting political subdivisions by drawing congressional district lines along existing county, municipal or other political subdivision boundaries. The State's interest in constructing congressional districts in this manner, it is suggested, is to minimize the opportunities for partisan gerrymandering. But an argument that deviations from equality are justified in order to inhibit legislators from engaging in partisan gerrymandering is no more than a variant of the argument, already rejected, that considerations of practical politics can justify population disparities."

He further states on p 536:

"A State's preference for pleasingly shaped districts can hardly justify population variances."

We adopt the principles laid down in *Kirkpatrick* v. *Preisler* and determine that the Muskegon County Apportionment Commission has not justified the variances contained in the instant plan.

Defendants likewise point to the fact that 50.3% of the population can elect a majority of the board, and while this is one of the criteria to which we look it cannot be used to justify population variances as great as we have in the instant case.[3]

Further, while we concur with Justice BRENNAN (*Kirkpatrick* v. *Preisler, supra*) in declining to adopt a fixed numerical or percentage population variance and agree that each plan must be considered on its own merits, we do for the guidance of the

[3] For those who would seek more information on apportionment we commend the Supreme Court Review, The Reapportionment Cases: One Person, One Vote—One Vote, One Value (1964), p 1.

Muskegon County Apportionment Commission and all others who may subsequently engage in the apportionment of county commissioners state that any plan which contains a variance ratio in excess of 1:1.10 is of doubtful constitutionality. However, this is not to say that any plan which may have less than the above-stated ratio will be automatically approved. Upon review, the drafters of a plan are required to justify all population variances and demonstrate a good-faith effort to achieve population equality.

Reversed and remanded to Muskegon County Apportionment Commission to reapportion the Muskegon County Board of Commissioners in accordance with this opinion and the provisions of PA 1966, No 261, as amended, and further to submit the revised plan to this Court for review on or before April 28, 1970.

All concurred.