APPORTIONMENT OF VAN BUREN COUNTY
BOARD OF COMMISSIONERS—1972

1. COUNTIES—COMMISSIONERS—APPORTIONMENT—SPLITTING CENSUS UNIT.

The statutory technique of "an actual population count" for the purpose of splitting a census unit when apportioning county commissioner districts can be used only to meet the standard of districts of equal population; splitting of census units is not permitted to correct the elongated shape of districts (MCLA 46.404[a]).

2. COUNTIES—COMMISSIONERS—APPORTIONMENT—STATUTORY GUIDELINES.

A county apportionment commission can depart from the United States Census units only to achieve population equality (MCLA 46.404[a]).

3. COUNTIES—COMMISSIONERS—APPORTIONMENT—SPLITTING CENSUS UNIT.

A county apportionment commission's splitting six census units by actual count allegedly to achieve a better population variance, which resulted in the shifting of hundreds of people simply to reduce the overall population disparity by 21, was not a good-faith effort to achieve population equality; each person moved when splitting a census unit must be accounted for and justified solely for the purpose of achieving population equality (MCLA 46.404[a]).

4. COUNTIES — COMMISSIONERS — APPORTIONMENT — GOOD-FAITH EFFORT.

A county apportionment commission's plan which shifted hundreds of people by splitting census units, which, after the splitting, had decreased the population variance from a plan

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 25 Am Jur 2d, Elections § 16 et seq.
[5] 25 Am Jur 2d, Elections § 17.

based on non-split units by 21 people, and which still had a population variance of 1:1.087, was unconstitutional, because it was based on a lack of a good-faith effort to achieve population equality.

5. Counties—Commissioners—Apportionment—Size of Board.

A county apportionment commission which is unable to achieve constitutionally and statutorily acceptable districts of equal population unless the size of its county board of commissioners is changed, must change the size of the board, because the Federal Constitution unequivocally mandates equality; if the choice is between the commission's statutory discretion to determine the size of the board of commissioners and constitutional equality, the constitution must prevail (US Const, Am XIV; MCLA 46.401 *et seq.*).

Original statutory action in the Court of Appeals to review apportionment plan. Submitted Division 3 April 18, 1972 at Lansing. (Docket No. 13790.) Decided April 19, 1972.

Statutory petition by Robert F. Streeter for review of county apportionment plan filed by the Van Buren County Apportionment Commission and for a new plan conforming to statutory and constitutional requirements. Apportionment plan declared unconstitutional. Remanded to the apportionment commission with instructions to draft a new plan.

*Jones, Webb & Jones,* for petitioner.

*William C. Buhl,* Prosecuting Attorney, for defendant.

Before: Danhof, P. J., and McGregor and Quinn, JJ.

Per Curiam. Last year the Board of Commissioners of Van Buren County made a very early start in drafting new districts for their 15-member

board. The first result was a plan consistently referred to by the litigants before us as "Exhibit C". This plan utilizes census units and is referred to in the pleadings filed before us by the commission as "the most perfect 15-man board plan which can be devised short of a special census". The difference of population between the highest district and the lowest district is 336, and the population variance ratio is 1:1.094. Shortly thereafter, the commissioners modified this plan by making an actual count in and splitting some six enumeration districts. The reasons advanced by the apportionment commission for this action of the board of commissioners "were not only to achieve a better population variance between the smallest and largest districts, but to correct the elongated shape of Districts 10 and 2 in Defendant's Exhibit C".[1] This modified 15-member board plan resulted in a difference of population between the highest and lowest district of 315, or 21 less than the total population spread between the two plans. The population variance ratio in the modified plan is 1:1.087, or a difference of .007. This latter is the plan[2] that was adopted by the

---

[1] "Defendant's additional answer in accordance with order to show cause", p. 3.

[2] Van Buren County 15 District Plan (approved by the Van Buren County Apportionment Commission on February 10, 1972).

| District | | | | |
|---|---|---|---|---|
| 14 | 3930 | | Maximum Population | |
| 13 | 3906 | | Variance Ratio | 1:1.087 |
| 8 | 3905 | | | |
| 3 | 3820 | | Minimum Population | |
| 1 | 3759 | | Electing a Majority | 29,343 or |
| 7 | 3758 | | | 52.24% |
| 5 | 3752 | 26,830 | | |
| | ——— | or | Average Population of | 3745 |
| | | 47.76% | District | Total=56,173 |
| 6 | 3751 | | | |
| 2 | 3727 | | Deviation of Largest | 185 or 4.49% |
| 9 | 3701 | | District from Average | Total=3930 |
| 12 | 3651 | | | |

Van Buren Apportionment Commission on February 10, 1972.

The petitioner requests this Court to declare the 15-man plan adopted by the Van Buren Apportionment Commission as unconstitutional and submits his own plan for a five-member board, which contains a difference of 30 between the district with the highest population and the district with the lowest population. The population variance ratio in this five-member plan is 1:1.003.

Before we discuss the merits of the constitutional question involved, we believe it advisable to refer the parties to our opinion in *In Re Apportionment of Ionia County Board of Commissioners—1972*, 39 Mich App 676 (1972). Therein they will find a detailed explication of the methodology of apportionment under the statute. In particular, we would call to the attention of the litigants in this cause the definition we have given of the statutory phrase "special census". Both parties have misunderstood the statutory phrase "special census" and, as a result, have extensively briefed this matter as an issue. However, what the parties vigorously argue over as the "special census" was nothing more than the statutorily permissible "actual population count" which may be used for the "division of official census units to meet the population standard".[3]

We must, however, point out to the Van Buren County Apportionment Commission that their use of the statutory technique of "an actual population count" was not conducted for the sole reason per-

| District | | | | |
|---|---|---|---|---|
| 11 | 3645 | | | |
| 14 | 3632 | | Deviation of Smallest | 130 or 3.47% |
| 10 | 3621 | | District from Average | Total=3615 |
| 4 | 3615 | 29,343 | | |
| | — | or | | |
| | | 52.24% | | |

[3] MCLA 46.404(a); MSA 5.359(4)(a).

mitted by the statute. The statute is explicitly clear that the only reason that can justify an actual population count for the purpose of splitting a census unit is meeting the standard of districts of equal population. The statute does not permit the splitting of a census unit "to correct the elongated shape of districts", as was done in this instance. There is one and only one overwhelming concern in the guidelines for apportionment of county boards of commissioners, and that is that the districts be of equal population. Consequently, to permit any apportionment commission to depart from the United States Census units for any reason other than to achieve population equality is to open the door to the nefarious abuse of gerrymandering.

As for the second reason advanced by the apportionment commission for the splitting of census units, we have already indicated the result of their desire "to achieve a better population variance". In splitting six enumeration districts by actual count, the commission literally moved about hundreds of people to achieve a difference in the variance of population from 336 to 315, or a net gain of 21. We believe this achievement of the apportionment commission leaves much wanting. Shifting about hundreds of people simply to reduce the overall population disparity by 21 can hardly be considered significant and can hardly be construed as an expression of a good-faith effort to achieve population equality.[4] We would refer the commission to our

---

[4] We must emphasize that at most only two plans were ever seriously considered by the apportionment commission. Both were 15-man plans originally drafted by the incumbent board of commissioners, and not by the apportionment commission. The first was "Exhibit C" drawn along the lines of census units; and the second was the adopted plan, which was a modification of Exhibit C, in that six out of 95 census units were split. The only other plan before the apportionment commission was petitioner's five-man plan,

opinion in *In Re Apportionment of Cass County Board of Commissioners—1972,* 39 Mich App 671 (1972), for the proper reason and the proper method to be employed in the splitting of census units. Furthermore, we would emphasize that each person moved when splitting a census unit must be accounted for and justified solely for the purpose of achieving population equality.

We have previously stated "that any plan which contains a variance ratio in excess of 1:1.10 is of doubtful constitutionality. However, this is not to say that any plan which may have less than the above-stated ratio will be automatically approved. Upon review, the drafters of the plan are required to justify all population variances and demonstrate a good-faith effort to achieve population equality."[5] Consequently, we hold that the plan adopted by the Van Buren County Apportionment Commission is

---

but the minutes indicate it was ignored. The constitutional good-faith issue is, therefore, highlighted here in two respects:

(1) There is no evidence that the apportionment commission even explored the possibilities of any other size board, or indeed any other possible variation of a 15-man board so as to achieve the goal of districts of equal population. This self-limitation does not reveal a very searching good-faith attempt to plumb the depths of population equality. (Note, *infra,* how petitioner was able to easily come up with a 15-man plan that eliminated more than half the disparity.)

(2) Nor is there any evidence that the commission ever exercised its own responsibility of exploration; rather, it refused to consider any plans other than the two which were drafted by the board of commissioners. This not only suggests the lack of good faith in pursuing districts of equal population, it opens the door to the charge that the apportionment commission was nothing more than a rubber stamp for the incumbent board of commissioners.

The record contains the statement that one of the prime virtues of the plan adopted was that it preserved an electoral district for each incumbent. We question whether preservation of incumbents' districts has any relevance to a good-faith attempt to achieve population equality. *League of Nebraska Municipalities v Marsh,* 242 F Supp 357 (D Neb, 1965), *app dis,* 382 US 1021; 86 S Ct. 642; 15 L Ed 2d 537 (1966); *Dusch v Davis,* 387 US 112; 87 S Ct 1554; 18 L Ed 2d 656 (1967).

5 *Apportionment of Muskegon County Board of Commissioners—1970,* 23 Mich App 156, 162 (1970).

in violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution and the statute.

The commission contends that "The apportionment commission has the right to choose the size of the board of commissioners when it apportions the county * * * Once the number is chosen, the apportionment commission, so long as it follows the guidelines set forth by statute * * * and the court's interpretation thereof, cannot be challenged."[6]

Although the reduction of the size of the board generally tends to reduce the population variance ratio, it is simply not mathematically correct as the commission states, that the ratio is reduced in each instance. Mathematically, the size of the population variance ratio in relation to the size of the board chosen is dependent upon the unique set of census figures that are available in the individual case. It is the number of the census units, the various population numbers within each census unit, and the contiguity of the various census units, which result in the substantial variety of possible combinations.[7]

For example, the petitioner has already demonstrated to us that the first plan drawn by the board of commissioners without the splitting of census units is not the "most perfect 15-man board plan which can be devised". Without splitting any census units, the petitioner has submitted a 15-man plan which has a population difference between the high-

---

6 "Defendant's brief", p. 4.

7 Cf. In re Apportionment of Ionia County Board of Commissioners—1972, 39 Mich App 676 (1972), where the lowest population variance ratio of 1:1.17 was achieved in both a 5-man board and an 11-man board by an effort of combining political subdivisions. A total of 13 plans, ranging from 5-man to 14-man boards were considered.

est and lowest districts of 245, for a population variance ratio of 1:1.068. This removes slightly less than half of the population disparity in the plan adopted and does so without the splitting of any census units.

The point is that if an apportionment commission feels strongly as to what the size of the board of commissioners should be for their county—as long as the board size is within the permissible range of the statute[8]—they should be able to achieve population equality in most instances, if they follow the methodology established under the statute. However, if for some reason, an apportionment commission is unable to achieve constitutionally and statutorily acceptable districts of equal population unless they change the size of the board of commissioners from that desired, then they must do so.[9] The Constitution unequivocally mandates equality. If the choice is reduced to one between statutory discretion as to the size of the board and constitutional equality, the Constitution must prevail.

This matter is remanded to the Van Buren County Apportionment Commission with instructions that they shall draft a new plan for the apportionment of the Board of Commissioners.

The commission shall file a copy of their new plan with the Clerk of the Court of Appeals and the Secretary of State within ten days from the date of this opinion. In turn, the Clerk of this Court shall forthwith present to this panel for their further review the plan filed by the Van Buren County Apportionment Commission.

---

[8] MCLA 46.402; MSA 5.359(2).

[9] On point is *Beens* v *Erdahl*, 336 F Supp 715 (D Minn, 1972) where a Federal district court ordered the size of the Minnesota Legislature reduced for the purpose of achieving districts of equal population.