APPORTIONMENT OF KENT COUNTY BOARD OF
COMMISSIONERS—1972

1. COUNTIES—APPORTIONMENT—PARTISAN POLITICAL ADVANTAGE.

An apportionment plan which demonstrates a good-faith effort to achieve districts of equal population will not be found to have been drawn to effect partisan political advantage without the presentation of actual evidence that this consideration was prominent, to the neglect of other statutory guidelines, in the adoption of the plan.

2. COUNTIES—APPORTIONMENT—PARTISAN POLITICAL ADVANTAGE.

The burden of proof on the issue of whether an apportionment plan was adopted to effect partisan political advantage is on the party seeking the suppression of the plan.

3. COUNTIES—APPORTIONMENT—PARTISAN POLITICAL ADVANTAGE.

Evidence that Republican candidates for the State Board of Education outpolled the Democratic candidates 55% to 45% and that a district-by-district breakdown of the returns of that election indicate that Republicans are in a majority in 16 of the 21 newly apportioned county board of commissioner districts is insufficient to establish that the Republican majority on the county apportionment board adopted the apportionment plan to effect partisan political advantage.

Original statutory action in the Court of Appeals to review apportionment plan. Submitted Division 3 May 3, 1972, at Lansing. (Docket No. 14017.) Decided May 23, 1972. Leave to appeal denied, 388 Mich 757.

Petition by Richard VanderMolen, James Deborst, Charles Nichols, Ricardo Meana, Donna Halvorsen, James Blaszak, Addelyn Dykhouse, John Newberg, and Charles Giammona for review of a

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 25 Am Jur 2d, Elections § 12 *et seq.*

county apportionment plan filed by the Kent County Apportionment Commission. Plan approved.

*H. David Soet* and *James S. Brady,* for petitioners.

*VanderVeen, Freihofer & Cook, P. C.,* for the apportionment commission.

Before: DANHOF, P. J., and McGREGOR and QUINN, JJ.

PER CURIAM. As the last guideline provided the county apportionment commission for redrawing boundaries for commissioner districts, the Legislature instructed that districts "not be drawn to effect partisan political advantage".[1] In this petition for review of the plan of apportionment adopted by the Kent County Apportionment Commission, the sole issue raised by the petitioners is that "the redistricting plan adopted was an intentional and systematic political gerrymander disenfranchising large numbers of registered voters in the County of Kent who regularly vote Democratic * * * ". In support of this allegation, petitioners present voting figures to illustrate county-wide Democratic Party strength in past Kent County elections which they contend are sufficient to justify allocation of at least 9 Democratic Party seats on the 21-member board of commissioners provided by the 1972 apportionment plan; as petitioners view the adopted plan, only 5 districts provide Democratic Party candidates with a reasonable anticipation of victory. Our review of the documentation petitioners have submitted and of the record before the apportionment commission discloses

_____
[1] MCLA 46.404(h); MSA 5.359(4)(h).

that petitioners have not established a violation of constitutional provisions or statutory requirements; we cannot therefore brush aside the work of the apportionment commission. *Whitcomb v Chavis,* 403 US 124, 161; 91 S Ct 1858, 1878; 29 L Ed 2d 363, 386 (1971).

The Kent County Apportionment Commission had a limited number of plans before it. Two were presented at its meeting of February 23, 1972. The first, designated the "Serafin Plan" after its sponsor, the Republican county chairman and chairman of the apportionment commission, provided for a 21-member board with districts ranging from 19,523 to 19,589, or a population deviation ratio of 1:1.003. The second, designated the "Blackwell Plan" after its sponsor, the Democratic county chairman and sole Democratic member of the commission, provided 18 seats on the board of commissioners with an impermissible population variance ratio of 1:1.101.[2] Although there was extensive public debate on the merits of the two plans, one member of the public made the only comment that the Serafin Plan favored the Republican Party; Mr. Serafin replied that he did not draw the plan to effect partisan political advantage. Nothing further was said regarding possible political gerrymandering at that time.

A few hours before the deadline established by the commission for the filing of plans, an amended Blackwell Plan was submitted for the consideration of the apportionment commission. The new proposal suggested a 21-member board. Most notably, 10 of the 21 districts contained 19,574 people while the remaining 11 contained 19,573, thus achieving zero population deviation. At the meet-

[2] *Apportionment of Muskegon County Board of Commissioners— 1970,* 23 Mich App 156 (1970).

ing of the commission that evening, the prosecuting attorney moved to extend the time previously scheduled for adoption of a plan to permit further study of the changes proposed in the Blackwell Plan and verification of the data contained therein; the motion passed. On the date scheduled for adoption of a plan, Mr. Serafin submitted an amended plan that also reduced population deviation in his 21 proposed districts to zero.

Presented with two plans of exact mathematical equality, the Kent County Apportionment Commission adopted the amended Serafin Plan on a 4–1 vote. The record discloses that Mr. Blackwell objected that the Serafin plans had been drawn to effect partisan political advantage; no response to this allegation was made. Throughout the record of the eight public meetings held by the apportionment commission, Mr. Blackwell's comment and that of the member of the public heretofore mentioned are the only suggestions that the Kent County Apportionment Commission in any way drew districts to effect partisan political advantage.

Moreover, the evidence petitioners now submit as to the strength of the Democratic Party in Kent County has little bearing on the good faith of the apportionment commission in drawing the commissioner districts. The petitioners' statistics do not necessarily require the conclusion that 16 Republicans and 5 Democrats will be elected to the Kent County Board of Commissioners in November, 1972. They merely reveal that the people of Kent County supported President Richard Nixon (Rep) over Senator Hubert Humphrey (Dem) by a margin of 58.1% to 41.9% in 1968; but supported Senator Philip Hart (Dem) over Mrs. Lenore Romney (Rep) by a margin of 60.6% to 39.4% in 1970;

and R. Robert Geake and David Robinson, II, Republican candidates for the State Board of Education, over Thomas J. Brennan and Annetta Miller, the Democratic candidates, by a margin of 54.9% to 45.9% in 1970. In addition, petitioners have provided a district by district breakdown of the 1970 State Board of Education race, from which they conclude that since Republican candidates carried 16 of the 21 districts, 16 Republican and 5 Democratic commissioners will be elected in November, 1972. We find this evidence unconvincing and the conclusion speculative. At best this tends only to show that the alleged Republican voting majority may be spread over a larger area and cover a greater number of people, while the alleged Democratic voting strength is highly concentrated among a lesser number of people. The constitution and statute require that the districts contain equal population, but there is no requirement, either statutorily or constitutionally, that the plan must reflect the proportionate vote of either political party in the county.

We have been guided in our determination by the decision of the United States Supreme Court in *Whitcomb v Chavis, supra.* While the issue therein consisted of alleged racial gerrymandering rather than political gerrymandering, and while the decision therein required application of Federal constitutional principles rather than interpretation of a statutory guideline,[3] we agree that the

[3] The County Apportionment Act in itself is an embodiment of Federal constitutional principles enunciated in *Reynolds v Sims,* 377 US 533; 84 S Ct 1362; 12 L Ed 2d 506 (1964). See *Kizer v Livingston County Board of Commissioners,* 38 Mich App 239 (1972).

Consequently, the statutory provisions cannot be interpreted without adherence to the interpretation of the United States Constitution found in *Reynolds, Avery v Midland County, Texas,* 390 US 474; 88 S Ct 1114; 20 L Ed 2d 45 (1968), and other decisions of the United States Supreme Court on the question of apportionment.

burden of proof on the issue of gerrymandering lies with the petitioners.[4] They have failed in this case to demonstrate that the action of the Kent County Apportionment Commission constituted "an intentional and systematic political gerrymander disenfranchising large numbers of registered voters * * * who regularly vote Democratic".

We also agree with the rationale underlying the Supreme Court's decision in *Whitcomb v Chavis:*

" * * * [T]ypical American legislative elections are district-oriented, head-on races between candidates of two or more parties. As our system has it, one candidate wins, the others lose. Arguably the losing candidates' supporters are without representation since the men they voted for have been defeated; arguably they have been denied equal protection of the laws since they have no legislative voice of their own. This is true of both single-member and multimember districts. But we have not yet deemed it a denial of equal protection to deny legislative seats to losing candidates, even in those so-called "safe" districts where the same party wins year after year.

" * * * [A]re poor Negroes of the ghetto any more under-represented than poor ghetto whites who also voted Democratic and lost, or any more discriminated against than other interest groups or voters in Marion County with allegiance to the Democratic Party, or, conversely, any less represented than Republican areas or voters in years of Republican defeat? We think not. The mere fact that one interest group or another concerned with the outcome of Marion County elections has found itself outvoted and without legislative seats of its own provides no basis for invoking constitutional remedies where, as here, there is no indication that this segment of the population is being denied access to the

---

[4] Where a petitioner alleges a constitutionally impermissible population deviation, however, the burden has been shifted to the apportionment commission to justify all deviations. *Apportionment of Muskegon County Board of Commissioners—1970, supra,* 23 Mich App 156, 162. Similarly, see *Kirkpatrick v Preisler,* 394 US 526, 530–531; 89 S Ct 1225; 22 L Ed 2d 519 (1969).

political system." 403 US 124, 153–155; 91 S Ct 1858, 1874–1875; 29 L Ed 2d 363, 381–382.

The basis of the democratic process presupposes that the candidate, once elected, will speak for the entire district he represents. The commissioner elected in any given district of Kent County in November, 1972, pursuant to this apportionment plan, will represent the people of his district, not just the Republicans, if he be a Republican, or the Democrats, if he be a Democrat.

We will not find any county's apportionment plan, which otherwise demonstrates a good faith effort to achieve districts of equal population, to have been drawn to effect partisan political advantage without the presentation of actual evidence by the petitioners that this consideration in adoption was prominent in the deliberations by the drafters to the neglect of the other statutory guidelines. Lacking any such evidence in this cause, we order the plan adopted by the Kent County Apportionment Commission be declared valid and constitutional.